**No. 06-587**
**(Judge Loren A. Smith)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**UNIONBANCAL CORPORATION & SUBSIDIARIES**

**Plaintiff**

**v.**

**THE UNITED STATES,**

**Defendant**

---

**UNITED STATES' MOTION FOR ENLARGEMENT OF DISCOVERY PERIOD AND RELATED DEADLINES**

---

The United States of America, Defendant, by and through its undersigned counsel, hereby moves the Court for a six-month extension of the remaining deadlines contained in the Court's January 2, 2008 Order (Dkt. # 18), so that fact discovery, currently scheduled to be completed by May 30, 2008, may instead be conducted until November 30, 2008, and all expert discovery dates set forth in the Order may similarly be extended by six months, such that all expert discovery shall be completed by February 1, 2009. This Court previously granted an extension of discovery at the parties' request because counsel for both parties were counsel in another case in this Court, *Consolidated Edison, Inc. & Subsidiaries v. United States*, 06-305-T (Cl. Ct.), that involved the same type of transaction ("LILO"). The *Consolidated Edison* case was tried during the months of

October and November 2007, and has involved substantial post-trial briefing, which is still ongoing.[1] This prior extension was granted for the purpose of allowing counsel to the parties in this case to focus on the trial of the *Consolidated Edison* case in hopes that it would assist the resolution of the instant case, as it involved many of the same issues. The development of this already complex $90 million case has been made more complicated by (1) Plaintiff's delays in producing documents as well as the possible failure to produce certain electronic documents at all; (2) delays by third-parties in fully responding to document subpoenas; (3) a privilege issue that has arisen between the parties only this last month; and (4) Plaintiff's decision to serve comprehensive discovery on the Defendant in the past few weeks. Accordingly, Defendant needs additional time to obtain all the relevant documents, take the depositions necessary to learn the facts behind the transactions at issue and fully respond to Plaintiff's discovery. As of this date, no date has been set for trial, and counsel for the Defendant does not believe that the granting of this motion will unduly delay the trial of this case. Defendant inquired of Plaintiff with respect to the requested extension of the discovery period, but Plaintiff would not agree to any extension of time.[2]

In support of its motion, Defendant submits as follows:

**A. <u>The Transactions at Issue Are Large and Complex.</u>**

This is an action for a refund of $90 million in corporate federal income taxes. At issue are the merits of tax deductions claimed on Plaintiff's 1998, 1999, 2000, 2001 and 2002 corporate

---

[1]Briefing is scheduled to conclude on May 24, 2008, and closing arguments are set for June 19, 2008.

[2]In recent discussions with Plaintiff concerning a possible enlargement of the number of permitted depositions given the complexity of the case and number of parties involved, Plaintiff agreed to twenty-five depositions (ten less than Defendant believes are necessary), but refused to agree to any of extension of time to complete the depositions that it agreed to. At the time Plaintiff finally agreed to a specific number, only twenty-three business days actually remained in discovery under the current schedule. Defendant is still seeking to reach an agreement concerning the number of permitted depositions with Plaintiff, prior to requesting leave from the Court.

income tax returns in connection with its purchase and implementation of two highly complex Lease-In/Lease-Out (LILO) tax shelter transactions. Although the Complaint identifies only five tax years at issue, the transactions before the Court purport to span a period of several decades, and thus may very well have ramifications on other tax years in which Plaintiff claimed similar tax deductions.

The LILO tax shelters at issue in this case concern UnionBanCal's purported lease-leaseback of (1) a hydroelectric facility located in Switzerland ("Misoxer") in 1998 and (2) a sports and entertainment facility located in Anaheim, California (the "Pond") in 1999. In form, UnionBanCal acquired a "head lease" on both Misoxer and the Pond for specified terms and then leased them back to the owners (*i.e.*, EGL as owner of Misoxer, and Anaheim as owner of the Pond) for shorter-term subleases. Even after entering into the transactions, the owners of the respective facilities continued to operate and use the facilities as they did prior to entering into the transactions. The two LILO transactions at issue here involved thousands of pages of complex legal agreements amongst a large number of companies and financial institutions. In addition, numerous professional firms and other accommodating parties were involved in the implementation of these transactions. Because of these complexities, a significant amount of discovery from both Plaintiff and third-parties is needed to fully understand the issues involved in these transactions.

**B. <u>Document Discovery is Not Yet Complete</u>.**

1. *Electronic Discovery Issues*

Prior to the *Consolidated Edison* trial, Defendant served its first set of interrogatories and request for production of documents on Plaintiff, and it received Plaintiff's productions from sources other than electronic sources (with the exception of a few documents relating to privilege issues

which were only recently produced). During the time counsel were concluding discovery in and preparing for trial in the *Consolidated Edison* case,[3] counsel for Plaintiff informed Defendant that it had identified about 44,000 pages of electronic searches that may be responsive to Defendant's discovery. At that time, instead of prior to conducting its search, Plaintiff proposed electronic discovery parameters (essentially mirroring the search that it had already undertaken). Because the search had already been conducted (and therefore the only issue would be whether Defendant believed Plaintiff needed to conduct additional searches), and because the parties had asked for an extension so as to allow counsel to focus on the *Consolidated Edison* trial and then turn back to discovery after the trial, Defendant followed up on this issue after the completion of the trial.

In the proposed joint scheduling order filed by the parties on December 19, 2007, the parties represented to the court that they were working on reaching an agreement with respect to the parameters of electronic discovery. (Dkt. # 17). On January 22, 2008, as promised to Plaintiff's counsel in the late December telephone conference concerning this scheduling order, Defendant responded to the specific parameters proposed by Plaintiff in an attempt to come to such an agreement with Plaintiff. Defendant posited specific questions not addressed in the proposal concerning (1) the actions Plaintiff had taken to preserve and/or search the electronic files of former employees, (2) the specific search terms used by Plaintiff in conducting its searches, and (3) more specific information pertaining to the back-up systems used by Plaintiff. Despite Defendant's numerous follow-up attempts to obtain this additional information from Plaintiff, Plaintiff has simply failed to respond and made no further effort to reach an agreement with Defendant on the scope of electronic discovery. Plaintiff has now taken the position that it believes the scope of its

[3]Trial commenced only a few weeks following the close of discovery in that case.

searches (as explained in its initial proposal) are sufficient and, instead of attempting to come to an agreement with Defendant, has indicated that Defendant must now pursue discovery of Plaintiff to determine whether the searches it undertook were sufficient. Thus, Defendant anticipates a 30(b)(6) deposition of Plaintiff concerning its electronic document searches and, based on Plaintiff's evasiveness on this matter, Defendant likely will need to follow that deposition with a motion to compel on the completeness of Plaintiff's responses to date, creating a further need for additional discovery time.

2. *Third-Party Discovery Issues*

In addition, shortly after the completion of the *Consolidated Edison* trial, Defendant served numerous third-party subpoenas for documents and has obtained tens of thousands of pages in response thereto. However, the primary third-party advisors to Plaintiff and the counter-parties to the transactions (who, based on Defendant's experience in these types of cases, other than the taxpayer, tend to have the most informative documents) need additional time to respond.

a. <u>Babcock & Brown Needs Additional Time.</u>

Anaheim's primary advisor, Babcock & Brown, has informed Defendant that it has electronic documents that may be responsive to Defendant's subpoena, but they are in a format that will take time and expense to extract. Defendant promptly followed up on these claims in an attempt to reach an agreement on a process to obtain those documents. Since that time Babcock & Brown has, at the request of Defendant, been in contact with various electronic discovery vendors to determine the best way to accomplish this. Because of the complex nature of the issues involved in obtaining these documents, as of this date, three months after service of the subpoena, Babcock & Brown has been unable to give a specific time frame for when the documents can be obtained.

b. <u>Credit Suisse has been Unable to Locate Documents.</u>

Additionally, after Credit Suisse, the primary advisor to EGL in the Misoxer Transaction, informed Defendant that it had been unable to locate *any* documents concerning the Misoxer transaction in response to Defendant's subpoena, Defendant noticed a 30(b)(6) deposition for May 1, 2008, to explore the searches undertaken in response to the subpoena and possible locations of responsive documents. The deposition is being pursued because Defendant has obtained evidence that communications concerning the Misoxer transaction went to Credit Suisse's New York offices and that third-party entities involved in the Misoxer transaction have had contact with Credit Suisse's Boston office. Shortly before the scheduled date, Credit Suisse asked to postpone the deposition informing Defendant that it needed more time to investigate to be able to fully respond to the topics identified for exploration at the deposition. As of yesterday counsel for Credit Suisse indicated that it still needs more time to properly respond at deposition.

c. <u>The BTMU Entities Need Additional Time.</u>

With respect to the BTMU entities, which include Plaintiff's primary advisor in the two LILO transactions (as well as a co-participant in the Misoxer transaction), there has been a delay in even beginning the process of obtaining documents. Mayer Brown, who is Plaintiff's counsel in this matter, also represents the BTMU entities. In its RCFC 26 disclosures, Plaintiff asserted the existence of a joint defense privilege between Plaintiff and the BTMU entities, and it requested that rather than contact those entities directly Defendant work through Mayer Brown. While Defendant was sending out other third-party subpoenas, it contacted Mayer Brown to inquire with respect to the BTMU entities and how it should proceed with the third-party discovery. After asking on several occasions how to proceed and receiving incomplete answers from Mayer Brown, on March

6, 2008, Defendant provided Mayer Brown with courtesy copies of the third-party subpoenas it intended to serve upon the BTMU entities so that Mayer Brown could provide those to its client and begin looking for documents while the representation issues were resolved. However, a few weeks ago, when Mayer Brown finally informed Defendant that it could contact the BTMU entities directly to obtain discovery, Defendant learned that Mayer Brown had not provided the copies of the subpoenas to its clients. After formally serving the BTMU entities with the third-party subpoenas, Mayer Brown, now through a different attorney, is handling the response to the subpoenas, and has informed Defendant that because the BTMU entities received the subpoenas only a few weeks ago (as opposed to when Defendant provided them six weeks earlier), they will be unable to comply with the response date set on the subpoenas. Thus, Defendant will receive these critical documents close to or after the current close of discovery.

d. <u>The Third-Party Advisors Are Seeking Protective Orders.</u>

In addition to the amount of time these advisors have informed Defendant is necessary to locate and produce responsive documents, both Babcock & Brown and the BTMU entities have lodged numerous objections, including the purported sensitive and confidential nature of some of the documents. Thus, Defendant has been attempting to work out stipulated protective orders with these entities to avoid the necessity of the third-parties moving for such protection from the Court. Defendant anticipates that it will be able to finalize those agreements in short order based on the efforts made to date; however, this has added to the time to obtain the requested documents.

**C. <u>Depositions Are Not Yet Complete.</u>**

Defendant has begun taking the depositions of those witnesses that are not involved in the issues identified herein, and expects to complete those depositions prior to the current close of

discovery. However, because key witnesses' depositions will be impacted by the inability to obtain documents, as well as recently arisen privilege issues, additional discovery time is needed.

1. *Inability to Obtain Documents Has Effectively Prohibited Depositions.*

Because of the important role the BTMU entities played in the transactions, Defendant will need additional discovery time to obtain and review the documents responsive to these subpoenas, and to be able to utilize those documents in subsequent depositions of employees of the BTMU entities and Plaintiff. Similarly, the delay in obtaining documents from Babcock & Brown and the dispute with Credit Suisse concerning its failure to produce any documents (other than document retention policies) also present issues that must be resolved prior to taking depositions of the key employees of Plaintiff and Anaheim, as well as the advisors themselves. In all likelihood these documents will number in the hundreds-of-thousands of pages based upon Defendant's prior experience with advisors to LILO transactions.

2. *Privilege Disputes Have Just Recently Arisen*.

After the first round of post-trial briefing was completed in the *Consolidated Edison* case, Defendant followed up on the 44,000 pages of electronic documents identified by Plaintiff just prior to the trial (but not produced) and requested a privilege log from Plaintiff. After several communications requesting these documents, Plaintiff finally agreed that it would produce the responsive documents located in these 44,000 pages in mid-March and a privilege log a few weeks later, because it had needed the time since January to review for responsiveness and privilege.

After producing its privilege log at the end of March, Plaintiff produced copies of tax opinion letters from counsel as well as other similar communications. Defendant promptly reviewed Plaintiff's privilege log and discovered that Plaintiff asserted privilege claims as to materials

pertaining to these opinions as well as to information funneled through its third-party advisor. Defendant promptly requested the production of these items in light of the prior productions and the injection of third-parties into attorney-client communications. However, Plaintiff stood by its assertions of privilege and has refused to turn them over. Because Defendant and Plaintiff have been unable to resolve these privilege issues, Defendant intends to file a motion to compel. Resolution of these privilege issues is necessary prior to depositions of the key employees of Plaintiff and its advisor involved in the communications that are the subject of dispute. This issue creates the need for further time to complete discovery.

3. *The Need for Depositions of Counsel Issuing Tax Opinions Has Just Arisen.*

Because of recently produced information concerning the role of counsel representing Plaintiff in entering into the LILO transactions, counsel's relationship with the advisors to the transactions, and issues concerning whether the opinions issued in LILO transactions were actually treated as privileged between attorney and client, Defendant anticipates it will need to serve subpoenas upon the law firms that represented Plaintiff in entering into the respective transactions. Initial depositions will be needed to explore issues concerning Plaintiff's privilege claims before Defendant files its motion to compel. Further, in all likelihood, document production by these law firms will be held up pending the resolution of the privilege issues.

**D. Plaintiff Just Served Comprehensive Discovery on Defendant for Which Defendant Needs Additional Time to Respond.**

On the evening of April 22, 2008, Plaintiff served comprehensive discovery on Defendant, seeking documents and information from individuals throughout both the Department of Justice and the Internal Revenue Service. Due to the possibility of having to contact numerous individuals within the Internal Revenue Service (as well as former employees thereof) to locate the sources of

potentially responsive information and the potential issues of privilege that may need to be invoked with respect to some of the information requested,[4] Defendant needs additional time beyond the initial thirty day limit provided for under the Rules of the Court of Federal Claims, which would fall outside the current discovery schedule.

WHEREFORE, for the reasons articulated above, Defendant respectfully requests that the Court extend the discovery period and related deadlines for six months.

Respectfully submitted,

/s/ Joseph A. Sergi
JOSEPH A. SERGI
Attorney of Record
U.S. Department of Justice, Tax Division
Post Office Box 26, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-0868
Facsimile: (202) 307-0054
NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief, Court of Federal Claims Section
DAVID N. GEIER
ADAM R. SMART
CAROLINE A. NEWMAN
Trial Attorneys

/s/ David Gustafson
Of Counsel

May 5, 2008

[4]This discovery includes a request for the redacted portions of internal appeals settlement guidelines used by the Internal Revenue Service in evaluating settlement of LILO transactions. This is the third time counsel for Plaintiff has sought this information. First, counsel for Plaintiff sought the information in a Freedom of Information Act request. *See Mayer Brown Rowe & Maw LLP v. Internal Revenue Service*, 04-2187 (D.D.C. Nov. 28, 2006). However, the court denied the request. *Id.* Most recently, in the *Consolidated Edison* case, Judge Horne granted Defendant's motion for a protective order with respect to the exact same request, with the exception of requiring the production of two limited portions of the guidelines. (6-305 (Cl. Ct.), Dkt. # 18). Defendant anticipates that it will need to file a motion for protective order in this case as well assuming Plaintiff continues to pursue its request.